IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTERN POWER, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1028 |
| | § | |
| TRANSAMERICAN POWER | § | |
| PRODUCTS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Western Power, Inc. ("Western Power," "WPI," or "Plaintiff") brings this action against defendant TransAmerican Power Products, Inc. ("TransAmerican," "TAPP," or "Defendant") asserting claims for breach of contract, quantum meruit, violation of the Texas Theft Liability Act, and fraudulent inducement.[1] Pending before the court are Plaintiff Western Power, Inc.'s Motion for Partial Summary Judgment as to Liability on Plaintiff's Breach of Contract Claim ("Plaintiff's Motion for Summary Judgment") (Docket Entry No. 22), Defendant TransAmerican Power Products, Inc. Motion for Partial Summary Judgment as to Plaintiff's Claims and Memorandum in Support Thereof ("Defendant's Motion for Summary Judgment") (Docket Entry No. 24), and Plaintiff Western Power, Inc.'s Motion for Sanctions Under FRCP Rule 37 for Failure to Preserve Evidence ("Plaintiff's Motion for Sanctions") (Docket

---

[1]See Plaintiff's Original Complaint and Jury Demand ("Complaint"), Docket Entry No. 1, pp. 4-6.

Entry No. 25). For the reasons stated below, Plaintiff's Motion for Summary Judgment will be granted, Defendant's Motion for Summary Judgment will be granted in part and denied in part, and a ruling on Plaintiff's Motion for Sanctions will be deferred until trial.

## I. <u>Factual and Procedural Background</u>

Western Power is a manufacturer's representative whose business consists of promoting its clients' products.[2] Western Power and TransAmerican entered into a written agreement setting forth the terms under which Western Power would represent TransAmerican.[3] The Agreement states that "Seller agrees to pay Representative a sales commission on actual sales of products, . . ." and provides a commission schedule.[4] The commission schedule provided that commission on net sales of $1,000,001 and over were "[t]o be negotiated."[5] Western Power's principal, Mikey Kleineider, emailed TransAmerican's controller, Hector de Uriarte, requesting to "learn how the commissions are calculated" in March of 2011.[6] TransAmerican terminated the Agreement on February 9,

[2] <u>Id.</u> at 2 ¶ 6.

[3] <u>See</u> Agreement, Exhibit A to Plaintiff's Complaint, Docket Entry No. 1-1.

[4] <u>Id.</u> at 2-3.

[5] <u>Id.</u> at 3.

[6] Exhibit 2 to Declaration of Hector de Uriarte ("de Uriarte Declaration"), Exhibit A to Defendant's Motion for Summary Judgment, Docket Entry No. 24-1, p. 12.

2017.[7]  Western Power filed this lawsuit on April 4, 2017.[8]  Western Power alleges that it dutifully and properly represented TransAmerican and sold its products, but that TransAmerican "failed and refused to compensate Plaintiff in accordance with the terms of the Agreement."[9]  During discovery in July of 2017 Western Power provided TransAmerican a spreadsheet indicating Western Power's calculation of the "Underpaid Dollar Amount."[10]  On September 16, 2017, TransAmerican's information technology infrastructure fell under cyberattack that affected its servers and personal workstations.[11]  All systems shut down and TransAmerican halted operations on September 18, 2017.[12]  Other than some information stored in paper format at TransAmerican's warehouse, most of the information sought by Western Power in this action was lost.[13]

---

[7]de Uriarte Declaration, Exhibit A to Defendant's Motion for Summary Judgment, Docket Entry No. 24-1, p. 6.

[8]See Complaint, Docket Entry No. 1.

[9]Id. at 3 ¶¶ 8-9.

[10]See Plaintiff's Underpayment Calculation Spreadsheet, Exhibit 1 to Declaration of Robert J. Kruckemeyer, Docket Entry No. 24-2, pp. 4-20; see also Plaintiff's Underpayment Calculation Spreadsheet, Exhibit A to TransAmerican Power Products, Inc.'s Motion for Leave to File a Supplement to its Motion for Partial Summary Judgment as to Plaintiff's Claims and Memorandum in Support Thereof, Docket Entry No. 28-2, pp. 4-20.

[11]Declaration of Igor Lubisco, Exhibit A to Defendant's Response to Plaintiff's Motion for Sanctions ("Defendant's Response/Sanctions"), Docket Entry No. 34-1, p. 2.

[12]Id.

[13]Declaration of Hector de Uriarte ("de Uriarte Declaration"), Exhibit B to Defendant's Response/Sanctions, Docket Entry No. 34-2, p. 2.

During mediation on October 17, 2017, TransAmerican produced an excel spreadsheet it had prepared in July of 2017 that shows its calculations of commissions.[14] In April of 2018 the parties filed the pending cross-motions for partial summary judgment,[15] responses in opposition to the other party's motion,[16] and Western Power filed a Motion for Sanctions.[17] The parties filed a Joint Pretrial Order on May 31, 2018 (Docket Entry No. 42).[18]

## II. Summary Judgment Standard

Summary judgment is warranted if the movant establishes that there is no genuine dispute about any material fact and that it is

---

[14]Confidential Attorneys Eyes Only ("Defendant's Commission Calculation Spreadsheet"), Exhibit F to Plaintiff Western Power, Inc.'s Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 38), Docket Entry No. 39; Defendant TransAmerican Power Products Inc.'s Response to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Response/MSJ"), Docket Entry No. 31, p. 2.

[15]Plaintiff's Motion for Summary Judgment, Docket Entry No. 22; Defendant's Motion for Summary Judgment, Docket Entry No. 24.

[16]Defendant's Response/MSJ, Docket Entry No. 31; Plaintiff Western Power, Inc.'s Objection and Response to Defendant's Motion for Partial Summary Judgment ("Plaintiff's Response/MSJ"), Docket Entry No. 36.

[17]Plaintiff's Motion for Sanctions, Docket Entry No. 25.

[18]TransAmerican filed TransAmerican Power Products, Inc.'s Supplement to Joint Pretrial Order ("TransAmerican's Supplement to Joint Pretrial Order"), Docket Entry No. 43, in which it re-urged the same arguments it made in (1) its Motion for Summary Judgment (Docket Entry No. 24) regarding the statute of limitations and applicability of the Discovery Rule to the breach of contract claim, and (2) its Response to Plaintiff's Motion for Sanctions (Docket Entry No. 34).

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).
An examination of substantive law determines which facts are
material. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510
(1986). Material facts are those facts that "might affect the
outcome of the suit under the governing law." Id. A genuine issue
as to a material fact exists if the evidence is such that a
reasonable trier of fact could resolve the dispute in the nonmoving
party's favor. Id. at 2511.

Where, as here, both parties have moved for summary judgment,
both "motions must be considered separately, as each movant bears
the burden of establishing that no genuine issue of material fact
exists and that it is entitled to judgment as a matter of law."
Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533,
538-39 (5th Cir. 2004). The movant must inform the court of the
basis for summary judgment and identify relevant excerpts from
pleadings, depositions, answers to interrogatories, admissions, or
affidavits that demonstrate there are no genuine fact issues.
Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986); see also
Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996).
If a defendant moves for summary judgment on the basis of an
affirmative defense, "it must establish beyond dispute all of the
defense's essential elements." Bank of Louisiana v. Aetna U.S.
Healthcare Inc., 468 F.3d 237, 241 (5th Cir. 2006). A defendant
may also meet its initial burden by pointing out that the plaintiff
has failed to make a showing adequate to establish the existence of

-5-

an issue of material fact as to an essential element of plaintiff's case. Celotex Corp., 106 S. Ct. at 2552. If the movant satisfies its initial burden, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions on file, or other evidence that summary judgment is not warranted because genuine fact issues exist. Celotex Corp., 106 S. Ct. at 2552.

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). But conclusory claims, unsubstantiated assertions, or insufficient evidence will not satisfy the nonmovant's burden. Wallace, 80 F.3d at 1047. If the nonmovant fails to present specific evidence showing there is a genuine issue for trial, summary judgment is appropriate. Topalian v. Ehrman, 954 F.2d 1125, 1132 (5th Cir. 1992). When a party chooses not to respond to all or part of a summary-judgment movant's validly supported motion, the court will not merely enter a "default" summary judgment, but it may accept as undisputed the facts the movant provides in support of its motion. See Eversley v. MBank Dallas, 843 F.2d 172, 173-74 (5th Cir. 1988) (finding that when the plaintiff failed to oppose the defendant's motion for summary judgment, the district court "did not err in granting the motion" because the motion established a prima facie showing of the defendant's entitlement to judgment).

# III. <u>Analysis</u>

## A. TransAmerican's Motion for Summary Judgment

TransAmerican asserts that it is entitled to partial summary judgment because the statute of limitations bars Western Power's claims on jobs that accrued before April 4, 2013, four years before Western Power filed its Complaint, and because Western Power cannot recover commissions on its claims involving jobs with net sales of $1,000,001 or more.[19]

### 1. <u>Statute of Limitations</u>

#### (a) Applicable Law

The statutes of limitations for Western Power's state law claims are governed by Texas law. <u>Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas</u>, 20 F.3d 1362, 1369 (5th Cir. 1994). "Under Texas law, the party asserting that a claim is barred by the statute of limitations bears the burden of proof on this issue." <u>Capitol One, N.A. v. Custom Lighting & Electric, Inc.</u>, 2010 WL 4923470 at *3 (S.D. Tex. Nov. 29, 2010) (citing <u>KPMG Peat Marwick v. Harrison County Houston Finance Corp.</u>, 988 S.W.2d 746, 748 (Tex. 1999)). "A defendant who seeks summary judgment on the basis of limitations must conclusively prove when the plaintiff's cause of action accrued." <u>Seureau v. ExxonMobil Corp.</u>, 274 S.W.3d 206, 226 (Tex. App.--Houston [14th Dist.] 2008) (citing <u>KPMG</u>, 988 S.W.2d at 748).

---

[19]<u>See</u> Defendant's Motion for Summary Judgment, Docket Entry No. 24, pp. 10-17.

## (1) Limitations Periods

Civil actions for breach of contract, quantum meruit, and fraudulent inducement must be commenced "not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.004(a)(3)-(a)(4); <u>Exxon Corp. v. Emerald Oil & Gas Co., L.C.</u>, 348 S.W.3d 194, 203 (Tex. 2011) (breach of contract); <u>Channel Source Inc. v. CTI Industries Corporation</u>, 2015 WL 13118198 at *3 (N.D. Tex. Oct. 26, 2015) (quantum meruit); <u>Walker v. Presidium, Inc.</u>, 296 S.W.3d 687, 694 (Tex. App.--El Paso 2009, no pet.) (fraudulent inducement). The statute of limitations for violation of the Texas Theft Liability Act is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a); <u>Wells Fargo Bank Northwest, N.A. v. RPK Capital XVI, L.L.C.</u>, 360 S.W.3d 691, 699 (Tex. App.--Dallas 2012, no pet.).

## (2) Accrual Dates

Ordinarily a claim accrues "when [a] plaintiff has a complete and present cause of action. In other words, the limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief." <u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>, 134 S. Ct. 1962, 1969 (2014) (citations and quotations omitted). "Under the legal-injury rule, a cause of action generally accrues when a wrongful act causes some legal injury, regardless of when the plaintiff learns of the injury, and even if all resulting damages have not yet occurred." <u>Seureau</u>, 274 S.W.3d

at 226. Texas courts use different methods to decide when an injury occurs and thus have reached different conclusions on accrual. See Rice v. Louis A. Williams & Associates, Inc., 86 S.W.3d 329, 336-41 (Tex. App.--Texarkana 2002, pet. denied) (discussing Texas courts' various theories and applications of the legal injury rule and the statute of limitations).

First, "[i]t is well-settled that an action for breach of contract accrues immediately upon breach." Seureau, 274 S.W.3d at 227 (citing Barker v. Eckman, 213 S.W.3d 306, 311 (Tex. 2006)). Second, "a claim of quantum meruit accrues on the date the defendant accepts the services at issue." Channel Source Inc., 2015 WL 13118198 at *3. But "[w]hen a provider is to be paid multiple times as services are provided, a quantum meruit claim accrues when the services are performed and claims for services performed and claims for services performed outside the limitations period are barred." Id. (citing Quigley v. Bennett, 227 S.W.3d 51, 55 (Tex. 2007). Third, generally a conversion claim accrues at the time of the unlawful taking. Wells Fargo Bank Northwest, 360 S.W.3d at 700. "However, if the original possession of the property is lawful, the limitations period does not begin to run until the return of the property has been demanded and refused, or until the person in possession has unequivocally exercised acts of domination over the property inconsistent with the claims of the owner or the person entitled to possession." Id. Finally, a cause of action for fraudulent inducement accrues on the date that the

defendant made the allegedly false representations. <u>In re Travelers Property Casualty Company of America</u>, 485 S.W.3d 921, 926 (Tex. App.--Dallas 2016).

However, under the "Discovery Rule" a claim accrues when the plaintiff knows or has reason to know of the injury upon which the claim is based. <u>S.V. v. R.V.</u>, 933 S.W.2d 1, 4 (Tex. 1996). The rule applies only "if the injury is both inherently undiscoverable and objectively verifiable." <u>K3C Inc. v. Bank of America, N.A.</u>, 204 F. App'x 455, 462 (5th Cir. 2006) (citing <u>HECI Exploration Co. v. Neel</u>, 982 S.W.2d 881, 886 (Tex. 1998)). At the summary judgment stage the burden is on the movant to "negate the discovery rule . . . by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." <u>KPMG</u>, 988 S.W.2d at 748.

    (b) Analysis

In its Motion for Summary Judgment TransAmerican states the appropriate statute of limitations for each cause of action, but does not distinguish between their accrual dates. Instead, in its Motion and its Reply TransAmerican provides accrual dates only as to Western Power's breach of contract claim and cites only breach of contract cases to support the contention that the causes of action accrued before April 4, 2013.[20]

---

[20]Defendant's Motion for Summary Judgment, Docket Entry No. 24, pp. 11-12; Defendant TransAmerican Power Products, Inc.'s Reply to
(continued...)

## (1) Breach of Contract

Western Power alleges that "Defendant failed to pay Plaintiff sums justly owed under the Agreement"[21] and that "[t]here are numerous projects and sales for which [] underpayments occurred."[22] TransAmerican argues that "pursuant to the Underpayment Calculation **prepared by WPI**, 52 of the commission payments made by TAPP were made prior to April 4, 2013."[23] TransAmerican's alleged breaches occurred when it failed to pay Western Power the amount it promised to pay and thus "accrued each time TAPP made a commission payment."[24] See <u>Seureau</u>, 274 S.W.3d at 227 ("breach of contract occurs when a party fails or refuses to do something he has promised to do"). Therefore, unless the Discovery Rule applies, the breach of contract claims for payments made before April 4, 2013, are time-barred because Western Power filed this lawsuit more than four years after the date the claim accrued. See Tex. Civ. Prac. & Rem. Code Ann. § 16.051.

---

[20](...continued)
Plaintiff's Response to Defendant's Motion for Partial Summary Judgment as to Plaintiff's Claims ("Defendant's Reply"), Docket Entry No. 40, pp. 1-2.

[21]Complaint, Docket Entry No. 1, p. 4 ¶ 11.

[22]<u>Id.</u> at 3 ¶ 10.

[23]Defendant's Motion for Summary Judgment, Docket Entry No. 24, p. 12.

[24]Defendant's Reply, Docket Entry No. 40, p. 2.

### (2)  Quantum Meruit

Plaintiff provided services from 2010 -- the year the parties executed the Agreement -- to 2017 -- the year Defendant terminated the Agreement.  The summary judgment record shows that from 2011 to 2017 Defendant paid Plaintiff a commission based on the net sale of each project.[25]  Therefore, quantum meruit claims for services rendered before April 4, 2013, are barred by the statute of limitations unless the Discovery Rule applies.

### (3)  Texas Theft Liability Act

Plaintiff alleges that "Defendant has received funds paid to it by customers who were sold products to them by Plaintiff *and* then wrongfully kept and converted the commission portion of those funds, essentially stealing them."[26]  Plaintiffs do not allege that it demanded payment of commissions, and the evidence reflects that in 2011 Plaintiff merely asked for an explanation of how Defendant calculated its commissions.  Defendant does not provide the court with an accrual date for this cause of action.  The court concludes that genuine issues of material fact as to the accrual date exist that preclude the court from granting summary judgment.

---

[25]Plaintiff's Underpayment Calculation Spreadsheet, Exhibit A to Amended Order Granting TransAmerican Power Products, Inc.'s Motion for Partial Summary Judgment ("Amended Order," Docket Entry No. 33-1), Docket Entry No. 33-1, pp. 3-19.

[26]Complaint, Docket Entry No. 1, p. 5 ¶ 13.

### (4)  Fraudulent Inducement

Plaintiff alleges that "Defendant induced Plaintiff into entering into an agreement which Defendant had no intention of living up to."[27]  Because the representations must have been made on or before the date Plaintiff and Defendant entered into the Agreement, the accrual date is no later than January 27, 2010.[28] Plaintiff filed this lawsuit in April of 2017.  Therefore, unless the Discovery Rule applies, Plaintiff's fraudulent inducement claim is time-barred by the statute of limitations.

### 2.  Application of the Discovery Rule

Western Power argues that the Discovery Rule applies because it sought information about commission payments from TransAmerican but that TransAmerican never provided that information.[29]  Western Power cites email correspondence between the representatives of the parties in which Western Power requested payment calculation information.[30]  Western Power argues that because "there was no way for Plaintiff to learn the final sales amounts, payments, or deductions from which his commission could be calculated *other than*

---

[27]Id. at 6 ¶ 14.

[28]See Agreement, Exhibit A to Complaint, Docket Entry No. 1-1, p. 3 ("This agreement shall be effective on January 27th, 2010, . . .").

[29]Plaintiff's Response/MSJ, Docket Entry No. 36, pp. 11-12.

[30]Id. at 11; see also Exhibits D and E to Plaintiff's Response/MSJ, Docket Entry Nos. 36-4 and 36-5.

by asking Defendant for information . . . the discovery rule protects Plaintiff's claims because Plaintiff did not have--and could not by the exercise of reasonable diligence obtain--the information necessary to determine the nature of its injury and the likelihood that it was caused by the wrongful acts of another."[31]

TransAmerican argues that the Discovery Rule does not save Western Power's claims from being barred by the statute of limitations because Western Power could have discovered whether TransAmerican improperly calculated commissions through the exercise of reasonable diligence.[32] TransAmerican cites the email correspondence between the parties to argue that Western Power could have discovered that information: "[A]s early as March 18, 2011 WPI was asking TAPP for an explanation as to how its commissions were calculated[,]" and when Mr. Kleineider visited TransAmerican Power offices on March 24-25, 2011, one purpose was to "learn how the commissions were calculated."[33] TransAmerican argues that "[a]lthough Mr. Uriarte has no specific recollection of discussing the commission calculations with Mr. Kleineider on those dates it can be inferred that whatever explanation was ever given to WPI was satisfactory to Mr. Kleineider because the jobs that Mr. Kleineider referenced in his March 22, 2011 email to

_____

[31]Plaintiff's Response/MSJ, Docket Entry No. 36, p. 13.

[32]Defendant's Motion for Summary Judgment, Docket Entry No. 24, p. 13.

[33]Id.

-14-

Mr. Uriarte are not included in the Underpayment Calculation prepared by WPI."[34]

The summary judgment evidence reflects that Mr. Kleineider of Western Power requested information about how TransAmerican calculated commissions for some of the projects and that Mr. Uriarte explained the commission paid on one project.[35] Mr. Kleineider also repeatedly asked when TransAmerican would pay the commissions.[36] TransAmerican presents no evidence that it provided Western Power with any of the remaining calculations, and Mr. Uriarte does not remember discussing the calculations with Mr. Kleineider.[37] Although Mr. Kleineider visited the TransAmerican office on several occasions, Western Power and TransAmerican never negotiated commissions on jobs of $1,000,001 or more.[38] At the

---

[34]Id. In its Supplement to Joint Pretrial Order TransAmerican repeats its arguments and contends that after receiving the first commission check Western Power "could have insisted that TAPP provide him with exacting calculations with respect to how TAPP calculated the commission. Plaintiff could have informed TAPP that he was not going to perform any more services for TAPP until the calculation was provided." TransAmerican's Supplement to Joint Pretrial Order, Docket Entry No. 43, p. 3.

[35]Email re: NEXT WEEK, Exhibit D to Plaintiff's Response, Docket Entry No. 36-4, p. 1.

[36]Emails from Kleineider re: FW: COMMISSION CHECK, Exhibit E to Plaintiff's Response/MSJ, Docket Entry 36-5, pp. 1-13.

[37]de Uriarte Declaration, Exhibit A to Defendant's Motion for Summary Judgment, Docket Entry No. 24-1, pp. 5-6.

[38]Id. at 6.

summary judgment stage the court will not infer that Mr. Kleineider was given the calculation information when he visited TransAmerican's office, or that with reasonable diligence he, or others from Western Power, could have discovered that information. The summary judgment evidence gives rise to a genuine issue of material fact as to whether Western Power knew or through "the exercise of reasonable diligence" should have known of the injury that forms the basis of Western Power's claims. <u>Royal v. CCC & R Tres Arboles, L.L.C.</u>, 736 F.3d 396, 400 (5th Cir. 2013) ("A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" (quoting <u>Anderson</u>, 106 S. Ct. at 2506)).

### 3. Net Sales of $1,000,001 or More

TransAmerican argues that it is entitled to partial summary judgment on Western Power's claims for jobs with net sales of $1,000,001 or more because the commission due on those jobs was "to be negotiated."[39] It argues that because there was "never a negotiation that required TAPP to pay WPI any amount in excess of the amount that TAPP paid to WPI[,]" Western Power is unable to establish that TransAmerican breached the contract.[40] Western Power responds that "[t]here was certainly an enforceable contract[,]"

---

[39]Defendant's Motion for Summary Judgment, Docket Entry No. 24, pp. 14-17; Agreement, Exhibit 1 to Defendant's Motion for Summary Judgment, Docket Entry No. 24-1, p. 10.

[40]Defendant's Motion for Summary Judgment, Docket Entry No. 24, p. 14.

and that based on the parties' prior course of dealing TransAmerican owes 1% commission on those jobs.[41]

(a) Whether the Parties Had an Enforceable Agreement

"Whether an agreement is legally enforceable is a question of law." Yazdani-Beioky v. Sharifan, Civil Action No. 14-15-00702, 2018 WL 2050450 at *6 (Tex. App--Houston [14th Dist.], May 3, 2018). "To be enforceable, a contract must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" Fischer v. CTMI, L.L.C., 479 S.W.3d 231, 237 (Tex. 2016) (quoting Pace Corp. v. Jackson, 284 S.W.2d 340, 345 (Tex. 1955). "[A] contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound." Id. (citing Fort Worth Independent School District v. City of Fort Worth, 22 S.W.3d 831, 846 (Tex. 2000)). Although both parties assert that they entered into the Agreement and that it is an enforceable contract, "even when that intent is clear, the agreement's terms must also be sufficiently definite to enable a court to understand the parties' obligations, and to give an appropriate remedy" for a breach. Id. (internal quotations and citations omitted). The contract must be definite only as to the terms that are material to the agreement, which are determined on a case-by-case basis. Id.

---

[41]Plaintiff's Response/MSJ, Docket Entry No. 36, pp. 14-15.

"'It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree.'" Id. (quoting Fort Worth Independent School District, 22 S.W.3d at 846). An agreement to agree is enforceable when it contains the material terms of the future contract such that the court can determine and enforce the parties' obligations. Id. Generally, the failure of the parties to agree on a price or provide a method to determine payment is too incomplete to be enforceable. Id. at 240 (citing Bendalin v. Delgado, 406 S.W.2d 897, 899 (Tex. 1966)). "But when the parties 'have done everything else necessary to make a binding agreement . . . , their failure to specify the price does not leave the contract so incomplete that it cannot be enforced.'" Id. (quoting id. at 900). In that case the court may presume that a reasonable price was intended. Id.

The Agreement states that "Seller agrees to pay Representative a sales commission on actual sales of products, . . . The sales commission shall be based on the net sales."[42] The Agreement specifies the percentage commission TransAmerican would pay Western Power for jobs under $1,000,001.[43] Therefore, the language of the Agreement as a whole indicates that the parties confirmed their

_____

[42]Agreement, Exhibit A to Complaint, Docket Entry No. 1-1, p. 2.

[43]Id.

mutual intent to reach a binding agreement that TransAmerican would pay Western Power commission on net sales, even on jobs with net sales of $1,000,001 and over. Because TransAmerican intended to be bound to its agreement to pay Western Power, "the law may presume that a reasonable price was intended, *even if* the price is left to be agreed by the parties and they fail to agree." Id. at 241 (internal citations and quotations omitted).

The parties' prior dealings and performance in reliance on the Agreement also support the conclusion that the clause is enforceable. As Plaintiff's Underpayment Calculation Spreadsheet shows, from 2011-2017 Western Power performed services for TransAmerican and TransAmerican paid for those services. See id. at 242 ("When parties have already rendered some substantial performance or have taken other material action in reliance upon their existing expressions of agreement, courts will be more ready to find that the apparently incomplete agreement was in fact complete and required the payment and acceptance of a reasonable price or a performance on reasonable terms.") (internal quotations and citations omitted). Therefore, the court concludes that the payment provision of the Agreement is enforceable.

(b)  How Much Commission is Owed

TransAmerican argues that for jobs with net sales of $1,000,001 and more -- line items 64, 70, 78, 112, 126, 147, 154, 168-69, 173-74, 189, and 205 of Plaintiff's Underpayment

-19-

Calculation Spreadsheet -- Western Power will be unable to recover any amount in excess of the amount that TransAmerican paid Western Power.[44] Plaintiff's Underpayment Calculation Spreadsheet shows that of the 13 jobs with net sales of $1,000,001 and over, TransAmerican paid 1% commission on four of the jobs, slightly over 1% on three jobs, slightly lower than 1% on one job, 0.4% on one job, and paid nothing to Western Power on four of those jobs.[45]

---

[44]Defendant's Motion for Summary Judgment, Docket Entry No. 24, p. 14.

[45]Plaintiff's Underpayment Calculation Spreadsheet, Exhibit A to Amended Order (attached to TransAmerican's Supplement to Its Motion for Partial Summary Judgment as to Plaintiff's Claims), Docket Entry No. 33-1, pp. 4-19.

| Line Item | Net Sales ($) | Paid ($) | Formula | Percent Commission Paid |
|---|---|---|---|---|
| 64 | $1,698,623 | $17,999 | 17,999 / 1,698,623 x 100 | 1% |
| 70 | 1,700,554 | 6,541 | 6,541 / 1,700,554 x 100 | 0.4% |
| 78 | 1,663,773 | 18,511 | 18,511 / 1,663,773 x 100 | 1% |
| 112 | 1,767,067 | 16,616 | 16,616 / 1,767,067 x 100 | 0.94% |
| 126 | 1,118,492 | 13,500 | 13,500 / 1,118,492 x 100 | 1.2% |
| 147 | 1,040,921 | 11,004 | 11,004 / 1,040,921 x 100 | 1% |
| 154 | 1,488,735 | 16,074 | 16,074 / 1,488,735 x 100 | 1% (continued...) |

Emails between TransAmerican and Western Power confirm that for some projects of $1,000,001 or more TransAmerican paid a 1% commission.[46] Mr. Uriarte wrote "all projects above 1 million are subject to a different arrangement . . . [i]n this particular case it has been agreed to commission payment of 1% over total value."[47] But the parties have presented no evidence explaining how TransAmerican calculated the commission payments it made that exceed 1% on projects of $1,000,001 or more.

Because the parties' Agreement required TransAmerican to pay commission on net sales of $1,000,001 or more in an amount "to be

---

[45](...continued)

| 168 | 1,117,842 | 16,905 | 16,905 / 1,117,842 x 100 | 1.5% |
| 169 | 1,053,489 | 11,639 | 11,639 / 1,053,489 x 100 | 1.3% |
| 173 | 18,325,454 | 0 | 0 / 18,325,454 x 100 | 0% |
| 174 | 39,2995,649 | 0 | 0 / 39,2995,649 x 100 | 0% |
| 189 | 2,758,985 | 0 | 0 / 2,758,985 x 100 | 0% |
| 205 | 1,586,713 | 0 | 0 / 1,586,713 x 100 | 0% |

[46]Emails between Uriarte and Kleineider, Exhibit C to Plaintiff's Response/MSJ, Docket Entry No. 36-3, pp. 1-2 ("From the 2nd payment received in the amount of 8,109,236.71, I am sending you $81,092.37").

[47]Id.

negotiated,"[48] because TransAmerican has paid nothing on four of those jobs, and because TransAmerican does not explain how the parties negotiated the commissions paid on projects of $1,000,001 or more, the court concludes that TransAmerican is not entitled to judgment as a matter of law. A genuine issue of material fact exists as to what commission Defendant owes under the Agreement: A jury could reasonably find that based on prior dealings TransAmerican owed Western Power 1% commission on those sales, evidence might reveal that the parties had negotiated a different percentage for different jobs, or the jury could find that some other reasonable payment was due.

    (c)   <u>Quantum Meruit</u>

TransAmerican argues that because both parties entered into the Agreement which sets out the commission structure, Western Power has no cause of action under quantum meruit. Under Texas common law a plaintiff seeking recovery under the theory of quantum meruit must prove that (1) valuable services were rendered or materials furnished (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. <u>Vortt</u>

---

[48]Agreement, Exhibit A to Complaint, Docket Entry No. 1-1, p. 3.

_Exploration Co., Inc. v. Chevron U.S.A., Inc._, 787 S.W.2d 942, 944 (Tex. 1990). However, a party may not recover in quantum meruit if an express contract exists that covers the plaintiff's services. _In re Kellogg Brown & Root, Inc._, 166 S.W.3d 732, 740 (Tex. 2005). Because the court concluded that the Agreement and the payment provision are enforceable and because both parties agree that they entered into a valid contract that established commission payments for net sales of $1,000,001 or more -- though they disagree as to what commission is due -- the court will grant Defendant's Motion for Summary Judgment as to this claim.

### (d)  Texas Theft Liability Act

Under the Texas Theft Liability Act, "[a] person who commits theft is liable for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code § 134.003(a). Western Power alleges that TransAmerican wrongfully kept and converted commission owed to Western Power.[49] TransAmerican argues that Western Power cannot prove that Defendant wrongfully kept and converted the commission owed on net sales of $1,000,001 or more because "there was never a negotiation" that required Defendant to pay Plaintiff more than it did.[50] For the same reason that the court will deny Defendant's Motion for Summary Judgment on the breach of contract claim for

---

[49]Complaint, Docket Entry No. 1, p. 5.

[50]Defendant's Motion for Summary Judgment, Docket Entry No. 24, p. 16.

commission owed on net sales of $1,000,001 or more, the court will deny TransAmerican's motion as to this claim. A genuine issue of material fact exists as to whether the amount of money that TransAmerican paid Western Power on those sales complied with the Agreement when the parties have provided no evidence about how their commission payments were calculated.

     (e)   <u>Fraudulent Inducement</u>

To recover on an action for fraudulent inducement the Plaintiff must prove that

> (1) a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew the representation was false or made it recklessly without knowledge of the truth as a positive assertion, (4) the representation was made with the intention that it should be acted upon by the party, (5) the party acted in reliance upon it, and (6) the party thereby suffered injury.

<u>Siddiqui v. Fancy Bites, LLC</u>, 504 S.W.3d 349, 369 (Tex. App.-- Houston [14th Dist.] 2016, pet. denied). Western Power alleges that "Defendant induced Plaintiff into entering into an agreement which Defendant had no intention of living up to."[51] TransAmerican argues that "WPI will be unable to prove that TAPP made a material misrepresentation to WPI with respect to the commissions to be paid on net sales over $1,000,001 as the Agreement explicitly states that those commissions are 'to be negotiated.'"[52] Western Power

---

[51]Complaint, Docket Entry No. 1, p. 6.

[52]Defendant's Motion for Summary Judgment, Docket Entry No. 24, p. 17.

responds that "Defendant, who worked at concealing how the commissions would be calculated and paid for *years*, never intended to pay Plaintiff all amounts due" and that TransAmerican's silence in response to requests for information "[i]s evidence from which Defendant's subjective intent to deceive Plaintiff may be inferred."[53]

Western Power raises a genuine issue of material fact as to this claim. The summary judgment evidence establishes that Western Power requested information about how TransAmerican calculated commissions and repeatedly asked about when it would receive commission payments.[54] The evidence also shows that TransAmerican paid different percentages of the net sales as commission on jobs with net sales of $1,000,001 or more. Although Western Power provides no evidence of any "material misrepresentation," a reasonable jury could find that TransAmerican induced Western Power to agree to the Agreement's payment terms, including the amount "to be negotiated." Therefore, the court will deny Defendant's Motion for Summary Judgment as to this claim. To summarize, the court will grant Defendant's Motion for Summary Judgment as to Plaintiff's claim for quantum meruit on jobs with net sales of $1,000,001 or more, and will deny Defendant's Motion as to the remaining claims.

---

[53]Plaintiff's Response/MSJ, Docket Entry No. 36, p. 19.

[54]Emails from Kleineider re: FW: COMMISSION CHECK, Exhibit E to Plaintiff's Response/MSJ, Docket Entry 36-5, pp. 1-13.

**B. Western Power's Motion for Partial Summary Judgment**

Western Power moves for partial summary judgment as to TransAmerican's liability on its breach of contract claim. Western Power argues that "Defendant admits Plaintiff and Defendant had a contract under which Defendant owes Plaintiff commissions Defendant has not paid."[55] To support its argument that TransAmerican admitted liability Western Power attaches an excel spreadsheet that TransAmerican produced during mediation that shows how it calculated Western Power's commission and includes a column entitled "Owed to WP."[56] TransAmerican responds that Western Power is not entitled to summary judgment because the excel spreadsheet is inadmissible pursuant to Federal Rule of Evidence 408.[57] TransAmerican does not dispute the other arguments presented in Western Power's motion. The only portion of TransAmerican's Response that the court could interpret as an attempt to dispute liability reads "TAPP certainly would not have shown the Excel Spreadsheet and extensively discussed its contents at the mediation if TAPP believed that in so doing it was admitting liability to Plaintiff on Plaintiff's breach of contract claim."[58]

---

[55]Plaintiff's Motion for Summary Judgment, Docket Entry No. 22, p. 3.

[56]See Defendant's Commission Calculations, Exhibit B to Plaintiff's Motion for Summary Judgment, Docket Entry No. 23, pp. 4, 6, 8, and 10.

[57]Defendant's Response/MSJ, Docket Entry No. 31, pp. 1-5.

[58]Id. at 5.

The court concludes that Western Power has satisfied its initial burden to show that no genuine issue of material fact as to liability exists. Nowhere in TransAmerican's Response does it dispute its liability or present any evidence that raises an issue of fact. Because TransAmerican only challenges the admissibility of the excel spreadsheet but has failed to present evidence establishing a genuine issue for trial on liability, partial summary judgment is appropriate. Topalian, 954 F.2d at 1132. The court will decide at trial on the admissibility of the spreadsheet, which is relevant to the amount of Western Power's damages.

## C.    Western Power's Motion for Sanctions

Western Power argues that TransAmerican's conduct is sanctionable under Rules 37(e)(1) and 37(e)(2). Rule 37(e) states:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > **(A)** presume that the lost information was unfavorable to the party;
> > >
> > > **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default
                    judgment.

Fed. R. Civ. P. 37(e). The advisory committee notes to Rule 37

state:

> Because the rule calls only for reasonable steps to
> preserve, it is inapplicable when the loss of information
> occurs despite the party's reasonable steps to preserve.
> For example, the information may not be in the party's
> control. Or information the party has preserved may be
> destroyed by events outside the party's control -- the
> computer room may be flooded, a "cloud" service may fail,
> a malign software attack may disrupt a storage system,
> and so on. Courts may, however, need to assess the
> extent to which a party knew of and protected against
> such risks.

Fed. R. Civ. P. 37, Advisory Committee Notes, 2015 Amendment,

Subdivision (e).

        Western Power argues that invoices and other documents

concerning commission or net sales were relevant to the dispute, in

TransAmerican's custody and control, should have been preserved,

and were destroyed.[59]  Western Power contends that even if

TransAmerican's computer system was hacked on September 16, 2017,

-- destroying the sales records between the parties --

TransAmerican should have taken reasonable steps to preserve and

protect the information since April 4, 2017, the date Western Power

filed its Complaint, or since June 5, 2017, the date TransAmerican

filed its Answer.[60] Western Power argues that it was prejudiced by

the loss and that "Defendant's inaction is sufficient

---

[59]Plaintiff's Motion for Sanctions, Docket Entry No. 25, p. 5.

[60]Id. at 5-6.

circumstantial evidence from which to infer that it intended to deprive Plaintiff of the relevant data."[61]

TransAmerican responds that it took reasonable steps to preserve the electronically stored information before and after the cyberattack, that Western Power has not been prejudiced because it already prepared its underpayment calculation, that it did not act in bad faith or intend to deprive Western Power, and that Rule 37(e) is inapplicable when the loss occurs due to a "malign software attack."[62] TransAmerican argues that because all of its servers and computers were affected by the cyberattack, any attempt to segregate relevant data into another file would have been fruitless.[63]

Although the advisory notes state that Rule 37(e) does not apply after a malign software attack, the court may assess whether Defendant adequately protected against the risk of such an attack. Fed. R. Civ. P. 37, Advisory Committee Notes, 2015 Amendment, Subdivision (e). Because the court's determination on whether TransAmerican took reasonable steps to preserve the information before the cyberattack is fact-intensive, the court will listen to the evidence and if it concludes that TransAmerican did not take

---

[61]Id. at 8.

[62]Defendant's Response/Sanctions, Docket Entry No. 34, pp. 5 and 10.

[63]Id. at 9.

reasonable steps the court will consider giving a spoliation instruction to the jury.

## IV. Conclusion and Order

Based on the foregoing analysis Defendant TransAmerican Power Products, Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Claims (Docket Entry No. 24) is **GRANTED in part and DENIED in part**; and Plaintiff Western Power, Inc.'s Motion for Partial Summary Judgment as to Liability on Plaintiff's Breach of Contract Claim (Docket Entry No. 22) is **GRANTED**. The court's ruling on Plaintiff Western Power, Inc.'s Motion for Sanctions Under FRCP Rule 37 for Failure to Preserve Evidence (Docket Entry No. 25) is **DEFERRED** until the court has heard the evidence at trial. Trial will be on damages alone. The court will hear evidence on whether Defendant's actions are sanctionable.

**SIGNED** at Houston, Texas, on this the 7th day of June, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE